### 42238. BROGDON v. THE STATE.
(335 SE2d 383)

BELL, Justice.

Appellant Phillip Brogdon was convicted for the murder of Ronnie Lee Robinson. He was sentenced to life imprisonment. Brogdon

appeals, and we affirm.[1]

At approximately noon on August 5, 1983, Brogdon visited Robinson's motel room at the Kings Motor Inn in Clayton County, Georgia, looking for one Franklin Smith. Julia Brooks (Robinson's common-law wife), Smith, and an individual named Max Woods were also in the motel room. Ms. Brooks went to the swimming pool while the others remained in the room. An argument ensued. Brogdon later claimed that the men jumped him, beat him and stole his money.

At approximately 11:30 p.m. Brogdon telephoned his home in Buford, asking for the assistance of his teenage sons, eighteen-year-old Phil and fifteen-year-old Vince.

Phil and Vince, accompanied by four teenage friends, agreed to meet Brogdon in the parking lot of a restaurant in Clayton County. A majority of the boys had been drinking beer. Upon arrival the boys observed that Brogdon had been beaten and had been "worked over pretty good."

Brogdon asked the boys to follow him, in their automobile, to the Kings Motor Inn. Several of the boys testified that they assumed that they were going to the motel to fight and to reclaim Brogdon's money.

Brogdon and the boys arrived at the motel, parked approximately eight hundred feet from Robinson's room, and got out of their automobiles. Brogdon instructed Greg Bohannon, one of the boys, to knock on Robinson's motel room door. The group then began to walk toward the room. According to one of the boys, Brogdon removed a rifle from the trunk of his car and carried it with him. Bohannon and Phil Brogdon, who was carrying a stick, approached the room.

Bohannon knocked on the door and quickly walked away. Max Woods opened the door. Max and Phil exchanged words. Phil, pointing toward Robinson, stated that he was talking to "that son of a bitch that messed with my dad." A scuffle ensued. Phil hit Max with a stick, causing him to fall to his knees.

At that moment Robinson approached the doorway. A gun was fired and Robinson, mortally wounded, fell to the ground.

At trial, two of the boys testified that Robinson looked like he was going to strike Phil before he was shot. Another of the boys, defense witness Greg Phillips, said that it looked like Robinson was reaching in his back pocket and that he thought he saw a shiny object that looked like a knife. One occupant of the motel room, however,

---

[1] The murder was committed on August 6, 1983. Brogdon was indicted on October 10, 1983, and found guilty and sentenced on February 29, 1984. He moved for a new trial on March 16, 1984, and filed an amendment thereto on August 30, 1984. The transcript was certified by the court reporter on June 28, 1984, and filed on July 9. The motion for new trial, as amended, was denied on December 3, and Brogdon filed his notice of appeal on December 14. This case was docketed in this court on April 16, 1985, and was submitted for decision without oral argument on May 16, 1985.

testified that Robinson did not have a weapon with him as he approached the door, and no weapon was discovered in the room. Julia Brooks testified that moments before the gunshot was fired, she observed Brogdon squatting down by the nearby swimming pool with a rifle in his hands.

Following the shooting, Brogdon, accompanied by the boys, fled the scene and checked into another motel for the remainder of the evening. Greg Bohannon testified that while in the car, Brogdon asked, "[d]id I get him?"

Sergeant Brewer of the Clayton County Police Department investigated the incident. He testified that he observed a spent round from a 30.06 rifle located at the fence in front of the motel room. As a result of interviews with several witnesses, a lookout was placed for Brogdon.

Brogdon was subsequently arrested outside of Holbrook, Arizona and was extradited to Clayton County, Georgia to stand trial.

1. Although Brogdon does not challenge the sufficiency of the evidence to support his conviction of murder, we find, viewing the evidence in a light most favorable to the jury's verdict, that the evidence was sufficient to enable any reasonable trier of fact to find the defendant guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his first and second enumerations of error Brogdon contends that the trial court committed reversible error in failing to conduct a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), before allowing testimony concerning two statements given by him. We disagree.

Two Arizona police officers stopped and arrested Brogdon. One of them testified that as he was handcuffing Brogdon, Brogdon stated he would have killed the two Arizona officers if his son had not been with him. There was no objection to this testimony, and there is no evidence in the record indicating that Brogdon made the statement as a result of custodial interrogation.

While Brogdon was in custody in Clayton County, he was interviewed by Sergeant Brewer of the Clayton County Police Department. Brewer testified that he read Brogdon his *Miranda* rights and then inquired whether Brogdon understood his rights. According to Brewer, Brogdon responded that he did and voluntarily signed a waiver of rights document. He did not request that an attorney be present.

Brewer and Brogdon then discussed the shooting of Ronnie Lee Robinson. When Brewer questioned Brogdon as to "why kill a person over them taking his money," Brogdon replied that Robinson was "nothing but garbage anyway." Brewer then asked Brogdon to put this statement in writing. Brogdon answered that he would have to

discuss it with his attorney. The interview ended at this time.

This testimony was introduced by the prosecution at trial, with no objection by the defense as to either the voluntariness of Brogdon's statement or to its admissibility at trial.

We find no error with regard to the admission into evidence of the above two statements.

"A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined." *Jackson v. Denno*, 378 U. S. 368, 380, supra. However, absent a challenge to the use of a statement in evidence, there is no statutory or constitutional requirement that the trial court hold, sua sponte, a *Jackson v. Denno* hearing regarding the voluntary nature of the statement. *Hudson v. State*, 250 Ga. 479 (6) (299 SE2d 531) (1983); *Kimbell v. State*, 252 Ga. 65 (2) (311 SE2d 465) (1984); *Wainwright v. Sykes*, 433 U. S. 72, 86 (97 SC 2497, 53 LE2d 594) (1977).

Since Brogdon did not challenge the admissibility of his statements at trial, the trial court was not required to, sua sponte, hold a *Jackson v. Denno* hearing. Moreover, the testimony given concerning Brogdon's two statements indicate that the statements were admissible: the one to the Arizona officer being a volunteered statement, not resulting from custodial interrogation, and the one to officer Brewer being a voluntary statement, given after a knowing and intelligent waiver of *Miranda* rights.

3. Following his conviction, Brogdon obtained new counsel, and in his motion for new trial claimed that his trial counsel provided ineffective assistance. The trial court, in denying the motion for new trial, disagreed. In his third through eighth enumerations of error, Brogdon contends that his trial counsel's representation was ineffective in a number of ways, including failure to request a *Jackson v. Denno* hearing, failure to develop a valid defense strategy, failure to perfect the record with regard to all pretrial motions, failure to call certain witnesses, and failure to request certain charges. We disagree.

We follow the Supreme Court's two-prong test set forth in *Strickland v. Washington*, ___ U. S. ___ (104 SC 2052, 80 LE2d 674) (1984), in determining whether there has been actual ineffective assistance of counsel, thereby requiring the reversal of defendant's conviction. The defendant must show both that counsel's performance was deficient and that this deficiency prejudiced the defense. *Strickland v. Washington*, supra, ___ U. S. at ___ (104 SC at 2064); *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985).

In *Strickland* the Supreme Court approved Georgia's "reasonably effective assistance" standard enunciated in *Pitts v. Glass*, 231 Ga. 638 (203 SE2d 515) (1974). *Strickland v. Washington*, supra, ___ U. S. at ___ (104 SC at 2064); *Smith v. Francis*, supra, 253 Ga. at 783.

Thus, counsel's performance will not be found to be deficient if it falls within the range of "reasonably effective assistance." To perform within this range, counsel must make all significant decisions in the exercise of reasonable professional judgment. The reasonableness of counsel's performance is then considered in light of the totality of the circumstances, viewed from counsel's perspective at the time of trial, thereby eliminating the possible distortions of hindsight analysis. *Smith v. Francis,* supra, 253 Ga. at 783. The defendant must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct.

Regarding the second prong of the test, the defendant must show that the deficient performance actually prejudiced the defense. In other words he must show there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's unprofessional errors. *Strickland v. Washington,* supra, ___ U. S. at ___ (104 SC at 2068); *Smith v. Francis,* supra, 253 Ga. at 783.

As mentioned above, Brogdon contends his counsel was ineffective because she failed, inter alia, to request a *Jackson v. Denno* hearing regarding the admissibility of Brogdon's voluntary statements. We find that Brogdon has failed to meet his burden of proving that his attorney's performance was deficient. The record demonstrates that the attorney conducted Brogdon's case in conformance with "reasonably effective assistance" standard as required by Georgia law. The attorney competently presented the case by questioning witnesses, making objections, and presenting Brogdon's defenses. The attorney's decision not to object to the introduction of Brogdon's statements, in view of the testimony of the voluntary nature of those statements, cannot be said to have rendered his attorney's assistance ineffective.

In addition, Brogdon failed to prove that a reasonable possibility existed that the attorney's alleged ineffectiveness prejudiced the outcome of the case. On the contrary, all the testimony and evidence introduced at trial clearly indicated Brogdon's guilt beyond a reasonable doubt. We therefore conclude, viewing the totality of circumstances from the attorney's perspective at the time of trial, that the attorney's conduct was both effective and reasonable.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 22, 1985.

*Larry M. Melnick,* for appellant.

*Robert E. Keller, District Attorney, William B. Florence, Jr., Assistant District Attorney,* for appellee.